# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| PEDRO GONZALEZ TORRES,<br>Plaintiff,<br><br>v.<br><br>UCONN HEALTH, et al.,<br>Defendants. | No. 3:17-cv-00325 (SRU) |

## RULING ON PENDING MOTIONS

Pedro Gonzalez Torres ("Gonzalez") commenced this action asserting various claims relating to his medical care while in the custody of the Connecticut Department of Connection. On August 29, 2017, I issued an Initial Review Order regarding Gonzalez's Amended Complaint, in which I directed service on defendant Nurse Rob Doe/Smith for deliberate indifference to serious medical needs and on defendants Nurse Barbara LaFrance, Dr. Johar Syed Naqvi, Commissioner Scott Semple, and Warden Carol Chapdelaine on a claim regarding the side-effects of Neurontin. *See* Doc. No. 30. The defendants have now filed a motion to dismiss the claims against Commissioner Semple, Warden Chapdelaine, and Nurse Rob, Doc. No. 54, as well as a motion to dismiss the complaint for failure to state a claim, Doc. No. 63, Gonzalez has filed a number of motions, including a motion for relief from judgment, Doc. No. 58; a motion for summary judgment, Doc. No. 60; a motion for default judgment, Doc. No. 62; and a motion to strike the defendants' second motion to dismiss, Doc. No. 65.

For the reasons that follow, I grant the defendants' first motion to dismiss in part and deny it in part. I deny the defendants' second motion to dismiss, deny as moot Gonzalez's motion to strike, and deny both Gonzalez's motion for relief from a judgment or order and his motion for default judgment.

1

**I.    Standard of Review**

To withstand a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Id.* Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and "draw[] all reasonable inferences in the non-movant's favor." *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012).

**II.    Facts**

Gonzalez's Amended Complaint makes the following allegations with regard to Commissioner Semple and Nurse Rob. (Neither the original nor the amended complaint contains any facts relating to Warden Chapdelaine.)

On October 21, 2016, Gonzalez experienced chest pains and shortness of breath. At 8:30 a.m., Gonzalez asked Correctional Officer Shulz to call for medical assistance. Nurse Rob told Correctional Officer Shulz that chest pains were not considered an emergency and that he would call back. Sometime later, Correctional Officer Shulz again called and spoke to Nurse Rob with

2

no results. Finally, Correctional Officer Shulz called the medical unit and spoke to someone else who directed that Gonzalez go to the medical unit.

After waiting in the medical unit for 45 minutes, Gonzalez asked Nurse Rob when he would be seen. Nurse Rob became belligerent and commented that chest pains were not a medical emergency, that he had 28 inmates to see, and that Gonzalez could wait. Nurse Rob also threatened to send Gonzalez to segregation if an EKG failed to show he was having a heart attack. Gonzalez responded that something was wrong and that he could not breathe. Nurse Rob continued to see other inmates and ignored Gonzalez.

At 12:05 p.m., Nurse David examined Gonzalez. He took Gonzalez's blood pressure and asked him a question. Nurse David instructed Gonzalez to sit in the waiting room until the facility count cleared. Gonzalez then returned to his cell.

On November 23, 2016, Gonzalez claims to have written a letter to Commissioner Semple regarding the incident with Nurse Rob. He refers to that letter as Exhibit 20. That exhibit, however, is a complaint on a form from the Department of Public Health Division of Medical Quality Assurance addressed to the Clinical Director of Correctional Managed Health Care. *See* Ex. 20 to Am. Compl., Doc. No. 22, at 6–9.

**III. Discussion**

 A. <u>The Defendants' First Motion to Dismiss [Doc. No. 54]</u>

The defendants move to dismiss the claims against Warden Chapdelaine, Commissioner Semple, and Nurse Rob. With respect to Warden Chapdelaine and Commissioner Semple, the defendants argue that Gonzalez alleges no facts to support claims against them for deliberate indifference to serious medical needs. With respect to Nurse Rob, the defendants contend that his alleged actions do not rise to the level of deliberate indifferent to a serious medical need.

1. *Defendants Chapdelaine and Semple*

To state a cognizable claim for damages, Gonzalez must allege facts showing the "personal involvement" of each defendant in the alleged constitutional violation. *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (Sotomayor, J.). In the instant case, Gonzalez seeks damages as relief and also "[p]roper medical attention/treatment and follow up treatment." *See* Doc. No. 20-1, at 10. The requested injunctive relief appears directed at his claims relating to the side-effects of medication, which are not at issue in the first motion to dismiss. I note, however, that I ordered service on Warden Chapdelaine and Commissioner Semple specifically with regard to the claim for side-effects of medication. Thus, Gonzalez's request for injunctive relief is applicable to Warden Chapdelaine and Commissioner Semple.

Gonzalez names Warden Chapdelaine as a defendant, but he makes no mention of her in his statement of facts. It appears he has named her as a defendant solely due to her position as warden. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676. Absent any claim that Warden Chapdelaine was personally involved in the allegedly unconstitutional conduct, Gonzalez cannot state a claim for damages against Warden Chapdelaine.[1]

Gonzalez alleges that he wrote a letter to Commissioner Semple regarding the incident with Nurse Rob. Because "personal involvement of defendants in alleged constitutional

---

[1] In his objection to the motion to dismiss, Gonzalez states that defendant Chapdelaine is responsible for every inmate in the facility and that defendant Semple is responsible for every inmate in Connecticut. He argues that they are therefore "liable under municipality." Doc. No. 59 at 7, ¶ 38. Gonzalez's municipal liability claim is simply a restatement of the claim that Chapdelaine and Semple are responsible for his care under a theory of *respondeat superior*. That is not a cognizable theory of recovery. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

4

deprivations is a prerequisite to an award of damages under [section] 1983," Gonzalez may state a claim against Commissioner Semple only if the Commissioner:

> (1) participated directly in the alleged constitutional violation,
>
> (2) after being informed of the violation through a report or appeal, failed to remedy the wrong,
>
> (3) created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom,
>
> (4) was grossly negligent in supervising subordinates who committed the wrongful acts, or
>
> (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *see also Shakir v. Derby Police Dep't*, 284 F. Supp. 3d 165 (D. Conn. 2018) (adhering to *Colon* because, although the Second Circuit has "recognized that *Iqbal* 'may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations,'" the Court "has not articulated whether or how *Iqbal* affects the categories of supervisory liability set forth by *Colon*") (quoting *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013)).

In *Grullon v. City of New Haven*, the Second Circuit held that, by alleging that a "[l]etter was sent to the Warden at an appropriate address and by appropriate means," a complaint plausibly supported a "reasonable inference . . . that the Warden in fact received the [l]etter, read it, and thereby became aware of the alleged conditions of which [the plaintiff] complained." 720 F.3d at 141. Furthermore, in *Grullon*, the plaintiff "submitted a copy of the . . . [l]etter he claim[ed] he sent to the Warden." *Id.* at 140.

Here, Gonzalez states that a copy of his letter to the warden is attached to his amended complaint as Exhibit 20. That exhibit is a letter addressed to the Clinical Director of Correctional Managed Health Care at an address in Farmington, Connecticut. The envelope indicates that the

5

letter was returned to the inmate marked undeliverable as addressed. Moreover, the letter itself is a complaint on a form from the Department of Public Health Division of Medical Quality Assurance. Although Commissioner Semple is named as the respondent on the complaint, the envelope demonstrates that the form was not mailed to him.

In addition, the clinical director of Correctional Managed Health Care is an employee of the University of Connecticut Health Center. *See* https://health.uconn.edu/correctional/about-us. The clinical director, therefore, is not the same person as the Commissioner of Correction. Thus, even had the letter been delivered, it would not show the "personal involvement" necessary for a section 1983 claim against Commissioner Semple. *Cf. Grullon*, 720 F.3d at 140–41. Because the materials provided by Gonzalez indicate that he did not send a letter to Commissioner Semple informing him of Gonzalez's complaints regarding Nurse Rob, there is no factual basis for a claim for damages against the Commissioner for supervisory liability. I grant the defendants' motion to dismiss with respect to any such claim.

As stated above, I directed service on Warden Chapdelaine and Commissioner Semple specifically with respect to the claim relating to the side-effects of medication. That claim requested injunctive relief and is not addressed in this motion. Warden Chapdelaine and Commissioner Semple remain defendants in their official capacities with respect to that claim.

2. *Defendant Rob*

The allegations against Nurse Rob could be construed as an attempt to state claims either for deliberate indifference to a serious medical need or for verbal harassment.

a. Deliberate indifference

To establish a claim for deliberate indifference to a serious medical need, Gonzalez must allege facts plausibly satisfying two elements. First, objectively, the alleged deprivation of

6

medical care must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

Gonzalez must allege facts showing that his medical needs, "either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). Although "[t]here is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition," *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003), the Second Circuit has identified "a non-exhaustive list" of factors to consider, such as:

> (1) whether a reasonable doctor or patient would perceive the medical need in question as "important and worthy of comment or treatment,"
>
> (2) whether the medical condition significantly affects daily activities, and
>
> (3) "the existence of chronic and substantial pain."

*Id.* (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

Second, subjectively, the defendants must have "act[ed] with a sufficiently culpable state of mind." *Salahuddin*, 467 F.3d at 280. They must been "actually aware of" or "deliberate[ly] indifferen[t] to . . . a substantial risk that serious inmate harm w[ould] result" from their actions or inactions. *Id.* "[T]he official's actions [must be] more than merely negligent," for negligence that might support a claim for medical malpractice is not cognizable under section 1983. *Id.* Nor does a section 1983 claim lie for "a mere difference of opinion over a matter of medical judgment." *Chance*, 143 F.3d at 703.

A delay in providing needed medical care can, under some circumstances, constitute deliberate indifference. "When the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation" will support a section 1983 claim. *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003). The Second Circuit has held

that a delay in treatment rises to that level when, for example, prison officials ignored "life-threatening and fast-degenerating" condition for three days, *Liscio v. Warren*, 901 F.2d 274, 277 (2d Cir. 1990), *overruled on other grounds by Caiozzo v. Koreman*, 581 F.3d 63 (2d Cir. 2009), or delayed necessary major surgery for over two years. *See Hathaway v. Coughlin*, 841 F.2d 48, 50–51 (2d Cir. 1988). Conversely, the United States District Court for the Northern District of New York has held that a "three-day delay in providing Plaintiff with pain medication . . . d[id] not plausibly suggest a mental state akin to criminal recklessness." *See Owens v. Clark*, 2017 WL 4357475, at *6 (N.D.N.Y. Sept. 29, 2017). Courts also have held that "primarily subjective" symptoms "do not rise to the level that would make [a] two-month delay in plaintiff's medication a serious deprivation." *See, e.g.*, *Hanrahan v. Menon*, 2010 WL 6427650, at *8–*9 (N.D.N.Y. Dec. 15, 2010) (plaintiff's symptoms of "feeling low," "sleep problems," and "periodic panic attacks involving dizziness, chest pains and difficulty breathing" did not show "a deterioration of his mental health that would support a claim that he suffered a serious deprivation of care")

Gonzalez's claim against Nurse Rob is that Nurse Rob failed to provide treatment for Gonzalez's complaints of chest pain and shortness of breath for several hours. Gonzalez alleges that Nurse David saw him around noon. Nurse David took his blood pressure and asked him a question. Gonzalez does not allege that this treatment was improper or inadequate. Hence, I must determine whether the challenged delay in treatment, from 8:30 a.m. until noon, was of itself "sufficiently serious." *Salahuddin*, 467 F.3d at 280.

Gonzalez has attached to his amended complaint medical records showing that he complained of chest pains or shortness of breath on several occasions. On each occasion, tests showed no serious medical source for the complaints. *See* Exs. 3 & 5 to Am. Compl., Doc. No. 20-1, at 24–27 & 31–32 (chest pain and dizziness on Aug. 30, 2015; EKG within normal limits;

8

relaxation techniques discussed); Ex. 11 to Am. Compl., Doc. No. 20-1 at 47–49 (chest pain on June 13, 2016, chart referred for review); Ex. 12 to Am. Compl., Doc. No. 20-1, at 50–52 (chest pain but no shortness of breath on June 20, 2016; EKG borderline; chart referred for review); Ex. 24 to Am. Compl., Doc. No. 22 at 17–18 (chest pain on Dec. 29, 2016; note to see in medical on Jan. 5, 2017); Ex. 27 to Am. Compl., Doc. No. 22 at 29–32 (chest pain on Feb. 2, 2017; EKG borderline); Ex. 30 to Am. Compl., Doc. No. 30 at 38–42 (chest pain on Mar. 28, 2017; EKG showed no acute issues). A number of episodes occurred before the incident with Nurse Rob.

As noted above, the Second Circuit has found deliberate indifference when a life-threatening, quickly degenerating condition was ignored for a few days, or when major surgery was delayed for over two years. Here, Gonzalez's condition was not life-threatening and the delay was not extraordinarily long. Although I do not suggest that Gonzalez's symptoms (which may be indicative of panic attacks) lack seriousness, I do not think that a reasonable doctor would deem them to require immediate treatment, especially after two years of complaints have failed to lead to the diagnosis of any life-threatening issue. *Cf. Brock*, 315 F.3d at 162. Moreover, the examination by Nurse David—which Gonzalez does not argue was inadequate—was cursory at best, consisting of a blood pressure check and one question. I conclude that Gonzalez's alleged delay in treatment does not rise to the level of egregiousness that the Second Circuit has held cognizable under section 1983.

b.  Verbal harassment

Gonzalez's allegations against Nurse Rob also may be considered a claim for verbal harassment. In a prison setting, "[a]llegations of threats or verbal harassment, without any injury or damage, do not state a claim under [section] 1983." *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 364 (N.D.N.Y. 2010) (quoting *Ramirez v. Holmes*, 921 F. Supp. 204, 210 (S.D.N.Y. 1996)); *see*

9

*also Cusamano v. Sobek*, 604 F. Supp. 2d 416, 490 & nn.166 & 167 (N.D.N.Y. 2009) (collecting cases). Threats accompanied by physical injury—or psychological injury that is "intentionally inflicted" and "more than *de minimis*"—might state such a claim. *Id.* at 491 & n.169 (citing cases). Because verbal harassment claims easily "may be fabricated," however, courts "approach those claims 'with skepticism and particular care.'" *Medina v. Kaplan*, 2018 WL 797330, at *7 (S.D.N.Y. Feb. 8, 2018) (quoting *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003)).

Here, Gonzalez claims that Nurse Rob stated that his chest pains were not an emergency, spoke in a belligerent manner, threatened to send him to segregation if an EKG did not show that he was suffering a heart attack, and made a threatening gesture toward him. Gonzalez does not assert that the harassment caused him to experience any physical or psychological injury, nor—in light of the "skepticism and particular care" with which I am instructed to regard verbal harassment claims, *see Davis*, 320 F.3d at 352—could Gonzalez plausibly allege such injury. Therefore, I conclude that Gonzalez's allegations fail to state a cognizable claim for violation of any constitutionally protected right. I grant the defendants' motion to dismiss with respect to all claims against Nurse Rob.

B. <u>The Defendants' Second Motion to Dismiss [Doc. No. 63] and Gonzalez's Motion to Strike [Doc. No. 65]</u>

Two months after the deadline passed to respond to the amended complaint, all of the defendants filed a second motion to dismiss on the ground that Gonzalez's complaint fails to set forth any cognizable claims. Doc. No. 63. Gonzalez responded with a motion to strike the second motion to dismiss. Doc. No. 65.

Because no defendant sought leave to file the belated second motion to dismiss, that motion was improperly filed. *See Orakwue v. City of New York*, 2014 WL 8381570, at *4 (E.D.N.Y. Aug. 4, 2014) (because defendants "failed to . . . obtain leave to file [a] second motion

10

[to dismiss]," the second motion motion was "improperly filed"). Furthermore, Rule 12(g)(2) states that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." *Cf. 7 West 57th St. Realty Co. v. Citigrp.*, 2015 WL 1514539, at *5–*7 (S.D.N.Y. Mar. 31, 2015) (granting leave to file a second motion to dismiss when an intervening decision "effected a change in the law, providing defendants . . . with a personal jurisdiction defense that was previously unavailable to them"). Three defendants—Commissioner Semple, Warden Chapdelaine, and Nurse Rob—previously filed a Rule 12(b)(6) motion, and the defense asserted in the second motion was available at that time. Accordingly, even had they sought leave, those three defendants would not be permitted to file a second motion to dismiss.

For those reasons, I deny the defendants' second motion to dismiss. I also deny as moot Gonzalez's motion to strike the second motion to dismiss.

    C.  <u>Gonzalez's Motion for Relief from a Judgment or Order [Doc. No. 58]</u>

Gonzalez moves pursuant to Federal Rule of Civil Procedure 60(a) for relief from my orders granting the defendants' motions for extension of time to respond to the complaint. *See* Docs. Nos. 52, 55. Rule 60(a) permits the Court to correct clerical mistakes or a mistake arising from an oversight or omission in a judgment or order. Gonzalez effectively seeks reconsideration of a decision by the Court. Because there was no clerical mistake, oversight or omission, I deny Gonzalez's motion for relief under Rule 60(a).

Construed as a motion for reconsideration, I also deny Gonalez's motion. "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."

*Schrader v. CSX Transp.*, 70 F.3d 255, 257 (2d Cir. 1995). Gonzalez merely complains that he was not aware that some of the motions for extension of time were filed until after the Court granted them. That objection is unavailing: this district's Local Rules permit the Court to rule on a motion for extension of time "without notice" to the opposing party and "before the expiration of the period ordinarily permitted for filing opposition papers." *See* D. Conn. L. Civ. R. 7(b)(2).

Gonzalez also contends that the reasons proffered by the defendants were inadequate to warrant the extensions of time. But the decision to grant an extension of time is within the district court's discretion. *See Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 896 n.5 (1990) ("Rule 6(b)(1) allows a court 'for cause shown' and 'in its discretion' to grant a 'request' for an extension of time . . . ."). Gonzalez has shown only that he disagrees with my decision, not that the decision was an abuse of discretion. Therefore, I deny his motion for reconsideration.

### D. Gonzalez's Motion for Default Judgment [Doc. No. 62]

Gonzalez previously filed two motions for entry of default, Docs. Nos. 46 & 47, which I denied as moot because the defendants had appeared and filed a motion to dismiss. Gonzalez has now filed a motion for default judgment, Doc. No. 62, essentially on the basis that the defendants have failed to respond to his motion for summary judgment.

Federal Rule of Civil Procedure 55 sets forth a two-step process for obtaining a default judgment. First, "[w]hen a party against whom affirmative relief is sought has failed to plead or otherwise defend, . . . Rule 55(a) empowers the clerk of the court to enter a default against [that] party." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). Second, once default has entered, the "plaintiff must . . . seek a judgment by default under Rule 55(b)." *Id.* Construed either as a motion for default entry or a motion for default judgment, Gonzalez's motion must be denied.

Entry of default is not appropriate here because the defendants have, in fact, appeared and defended the action. Although their response to Gonzalez's motion for summary judgment is overdue, the defendants have actively litigated the case and filed two motions to dismiss. This is not a case where the defendants have failed to appear, "willfully disregarded . . . court[] order[s]," or otherwise "signaled . . . [their] intention to cease participating in [their] own defense." *See City of New York v. Mickalis Pawn Shop*, 645 F.3d 114, 130 (2d Cir. 2011).

Moreover, the Second Circuit has expressed an "oft-stated preference for resolving disputed on the merits." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). Notwithstanding judges' "understandable zeal for a tidy, reduced calendar of cases," *id.* at 96, the Second Circuit has cautioned that a default judgment is an "extreme sanction," and "must remain a weapon of last, rather than first, resort." *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981). The present case is not one of the "rare occasions" in which entering default as a sanction is appropriate. *See Diakuhara*, 10 F.3d at 96. Therefore, I deny Gonzalez's motion.

**IV.    Conclusion**

The defendants' first motion to dismiss [**Doc. No. 54**] is **GRANTED IN PART** and **DENIED IN PART.** The motion is granted with prejudice with respect to any claims for damages against defendants Chapdelaine and Semple. Claims against them in their official capacities for injunctive relief, however, remain pending. The motion to dismiss also is granted with prejudice with respect to the claims against defendant Rob.

The defendants' second motion to dismiss [**Doc. No. 63**] is **DENIED**. Gonzalez's motion to strike the defendants' motion [**Doc. No. 65**] is **DENIED AS MOOT**.

Gonzalez's motion for relief from a judgment or order [**Doc. No. 58**] and motion for default judgment [**Doc. No. 62**] are **DENIED**.

The defendants are reminded that their response to Gonzalez's motion for summary judgment, Doc. No. 60, was due by March 28, 2018. If the defendants do not file an opposition to the motion for summary judgment within **fourteen (14) days**, then that motion will be granted absent objection with respect to Gonzalez's remaining claims.

So ordered.

Dated this 7th day of June 2018 at Bridgeport, Connecticut.

<u>/s/ STEFAN R. UNDERHILL</u>
Stefan R. Underhill
United States District Judge